```
 1                   UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF FLORIDA
 2
                     Case No. 09-60302-CR-HURLEY
 3

 4   UNITED STATES OF AMERICA,)
                               )
 5           Plaintiff,        )
                               )
 6       -v-                   )
                               )
 7   JOEL WILLIAMS,            )
                               )
 8           Defendant.        )   West Palm Beach, Florida
                               )   January 6, 2011
 9   _____)   10:04 a.m.

10

11                         PAGES 1 - 18

12          TRANSCRIPT OF SENTENCING PROCEEDINGS

13       BEFORE THE HONORABLE DANIEL T. K. HURLEY

14                     U.S. DISTRICT JUDGE

15

16   Appearances:

17
     For the Government:        NEIL KARADBIL
18                              Assistant United States Attorney
                                500 East Broward Boulevard
19                              Fort Lauderdale, Florida  33301

20   For the Defendant:         DARYL E. WILCOX
                                Assistant Federal Public Defender
21                              One East Broward Boulevard
                                Fort Lauderdale, Florida  33301
22

23
     Reporter:                  Karl Shires, RPR, FCRR
24   (561) 514-3728             Official Court Reporter
                                701 Clematis Street, Suite 258
25                              West Palm Beach, Florida  33401
```

STENOGRAPHICALLY RECORDED COMPUTER-AIDED TRANSCRIPT

```
 1         (Call to Order of the Court.)
 2         THE COURT:  The next matter before the Court is Case
 3   No. 09-60302.  This is the case of the United States versus
 4   Mr. Joel Williams.
 5         Let be me begin, if I might, by allowing the lawyers
 6   to make their appearances.  I'm go going to start by
 7   recognizing counsel for the Government.
 8         MR. KARADBIL:  Good morning, your Honor.  Neil
 9   Karadbil on behalf of the Government.
10         THE COURT:  Let me turn now, if I might, to counsel
11   for the defense.
12         MR. WILCOX:  Good morning, your Honor.  Darryl Wilcox,
13   Assistant Federal Public Defender, on behalf of Defendant Joel
14   Williams.  He is present in court.
15         THE COURT:  Mr. Wilcox and Mr. Williams, good morning.
16         THE DEFENDANT:  Good morning, your Honor.
17         THE COURT:  This is a case where we actually had a
18   trial that resulted in a mistrial.  The jury was unable to
19   decide the case.  And then it was followed by a plea by
20   Mr. Williams.
21         It is my understanding that the parties on both sides
22   are recommending the imposition of a sentence of probation.
23         Do I understand that?
24         MR. KARADBIL:  No, Judge.  I hadn't agreed to that.
25         THE COURT:  I see.
```

```
 1          MR. KARADBIL:  My position is essentially a guideline
 2   sentence.  We believe the guidelines are actually 6 to 12
 3   months.  I think the dispute here is whether the Guidelines are
 4   6 to 12 or 0 to 6.
 5          THE COURT:  Can I help you all?  I'm going to impose a
 6   sentence of probation.  And I just thought that I should tell
 7   you that right up front because it may help you in terms of
 8   your -- how you approach the case.
 9          I want to listen to everybody, but this is one of
10   those cases where I've not only had an opportunity to accept a
11   plea, I sat through a long trial and have a sense, I think, of
12   a broader picture than a judge normally does in the process of
13   just accepting a plea.
14          Now, as the parties are aware, the Court has to go
15   through a two-part process today in terms of deciding how to
16   handle the case and how to impose a sentence.  And the first
17   part is consulting the advisory sentencing guidelines.  As
18   everyone understands, the Supreme Court has ruled that these
19   Guidelines are advisory but has further indicated that the
20   Court must consult them.  And the Court of Appeals has
21   repeatedly told us that to properly consult the guidelines the
22   Court needs to make sure they've been accurately calculated.
23          Now, what that means is we need to just stop a minute
24   and take a look at the presentence investigation report.  We
25   want to make sure that the factual statements are correct.  We
```

```
 1  want to make sure that the legal conclusions that have been
 2  drawn from those factual statements are appropriate.  And then,
 3  of course, very, very important we want to make sure the
 4  numbers are correct.
 5          So let's just take a minute.  Looking first at the
 6  facts in the case from the defense standpoint, are there any
 7  objections to the facts as stated?
 8          MR. WILCOX:  Your Honor, just one factual dispute in
 9  Paragraph 15.  I know in my objections I made an overall
10  objection to the recitation of the money laundering facts or
11  the fact that support the money laundering charge.  However, in
12  light of the Court's announcement I just want to direct the
13  Court to one factual problem I have in Paragraph 15.  In the
14  middle of that paragraph it says, Williams told undercover
15  agents that money obtained by fraud was not called money
16  laundering -- was not called laundering money in the Bahamas.
17  That's not quite exactly what he said.  I think what he said
18  was that I was talking to my lawyer about this and as long as
19  it is not drugs, terrorism, or arms dealing it's --
20          THE COURT:  Is it fair to say now you're withdrawing
21  that objection?
22          MR. WILCOX:  Yes, your Honor.
23          THE COURT:  All right.  Good.
24          Any objections from the Government as to facts in the
25  PSI?
```

```
 1              MR. KARADBIL:  Not to the facts, your Honor.
 2              THE COURT:  Okay.  Let's move then to the second
 3    category, and that's legal issues.
 4              Mr. Wilcox, are there any legal issues within the
 5    presentence investigation report?
 6              MR. WILCOX:  Just as we indicated, your Honor, that we
 7    don't believe that the two-level enhancement that applies to
 8    the money coming from criminal activity, the money that he
 9    failed to report to the IRS coming from criminal activity, we
10    don't think this applies.
11              THE COURT:  Is it fair to say, though, that you're
12    going to withdraw that objection at this point?
13              MR. WILCOX:  Yes, your Honor.
14              THE COURT:  All right.  Any objections from the
15    Government as to the legal issues in the PSI?
16              MR. KARADBIL:  No, your Honor.
17              THE COURT:  Let's just take a second then and walk
18    through the calculations.  Beginning on Page 13 the total
19    offense level is reflected as a total offense level of 10.  And
20    if we move over to Page 15 which gives a background as to
21    Mr. Williams' background, he has a criminal history category of
22    one, the lowest possible criminal history category.  And then
23    moving over to Page 21 at Paragraph 82 the recommended
24    guideline imprisonment range is a range of 6 to 12 months.
25              Both parties agree that those are the correct
```

1    calculations within the guidelines?

2             MR. WILCOX:  The defense agrees, your Honor.

3             MR. KARADBIL:  Yes, your Honor.

4             THE COURT:  Now, as I said before, you know, there was
5    a time when the guidelines were mandatory, and I think it's
6    fair to say they were very -- some people would say rigorously,
7    some people would say rigidly enforced, but the point is the
8    sentences were really meant to be within the guideline range.
9    The Supreme Court has ruled that the guidelines are -- that
10   they were unconstitutional in that framework and has said that
11   they can only be advisory.

12            Now, because of that the Court is now obligated in a
13   second part of the proceeding to look at a series of factors
14   set forth in Title 18.  And I'm going to do that in a moment.
15   But before getting to that the law requires that I ask
16   Mr. Williams a question.  And the question is whether he is
17   aware of any problem or any difficulty, really anything at all
18   that would actually stop the Court today and prevent the Court
19   from imposing a sentence in this case.

20            Are you aware of initial like that, Mr. Williams?

21            THE DEFENDANT:  No, your Honor.

22            THE COURT:  No legal cause having been shown as to why
23   sentence of law should not be imposed, I would be more than
24   happy to hear whatever you would like to say.  And if it's okay
25   with you, I'm going to turn first to Mr. Wilcox, if I might, to

```
 1   speak on your behalf, and I'm going to come right back to you
 2   in a moment.
 3             Mr. Wilcox.
 4             MR. WILCOX:  Thank you, your Honor.
 5             First of all, I want to point out that Mr. Williams
 6   has paid $900 toward the restitution.  He's taken this very
 7   seriously.  And he also has a money order.  He's prepared to
 8   pay his $100 assessment today as soon as these proceedings have
 9   concluded.
10             As I noted in my sentencing memorandum, your Honor,
11   he's 55-year-old man with a high school education.  He's
12   married.  The statistics that we provided show that these
13   people are not likely to recidivate or least likely to
14   recidivate and -- is that a word, recidivate?  Did I say that
15   right?
16             THE COURT:  I'm not sure.
17             MR. WILCOX:  Is least likely to repeat, your Honor.
18   So I would suggest -- I would ask that the Court does -- just
19   reiterate what the Court said it was going to do, and I ask for
20   a sentence of probation and a special condition of home
21   detention as contemplated by the guidelines because he is in
22   Zone B of the guidelines.  Thank you, your Honor.
23             THE COURT:  All right.  Well, thank you.
24             Mr. Williams, would you like to speak, sir?
25             THE DEFENDANT:  I thought I was prepared.  I'm sorry
```

1  to everybody; my wife of 16 years, the Court, the prosecutor,
2  the FBI and everybody.  It has been the longest 15 months and
3  14 days and I -- I'm just sorry.
4            THE COURT:  Thank you very much, Mr. Williams.
5            Let me turn to Mr. Karadbil to get the benefit of the
6  Government's thinking in this case.
7            MR. KARADBIL:  Judge, you know, I have great respect
8  for this Court and I know the Court sat through this trial and
9  heard all of the testimony and I know the Court pays attention
10 as close as any jurist there is on the bench.  And I was
11 confident in terms of the Court making the fact-findings that
12 would be appropriate in this case and, in fact, the sentence
13 that would be appropriate in this case.  And clearly the Court
14 has discretion.  We have a difference of opinion with regard to
15 the matter.
16           You know, the Government's position is that we have no
17 problem with the low end of the guideline sentence given the
18 guidelines at 6 to 12, but I understand the discretion the
19 Court has and I understand that the Court may feel that it's a
20 reasonable sentence to give Mr. Williams probation.
21           Our feeling is, you know, the facts would have
22 justified some, at least something in terms of some term of
23 confinement.  But given the circumstances of the case and the
24 way everything unfolded in this matter I understand the Court's
25 position.

```
 1              THE COURT:  Thank you very much.
 2              My obligation today is to look at a series of factors
 3    that Congress has set out in Title 18 of the United States
 4    Code, Section 3553(a).  And I begin by looking at the nature
 5    and the circumstances of the offense.
 6              I think that we know, certainly in Palm Beach County
 7    we know and in some of the other counties as well that public
 8    corruption is a corrosive thing, that it exists, and we need
 9    law enforcement to aggressively go after it.  And that clearly
10    was the focus of the investigation that began.  There's no two
11    ways about it.  The Government was very, very concerned with I
12    think a member of the Broward County Commission, Mr. -- was it
13    Eggelletion was the gentleman's name?
14              MR. KARADBIL:  Eggelletion, yes.
15              THE COURT:  Eggelletion.  And that was how the case
16    got going.  But I want to tell you in this case I think the
17    case went way off base where the Government suddenly not being
18    able to get Mr. Eggelletion or not -- maybe having gotten him
19    but moving on that then went after other people in the Bahamas.
20              I want to tell you something.  If I were sitting as
21    the jury in this case, I would have found Mr. Williams not
22    guilty by virtual of entrapment.  I think the Government went
23    way off base in what they were doing.  There was no crime.  The
24    whole thing was being created by the Government and created by
25    the Government in a way to lure somebody into it.  That was my
```

1  sense.  I sat and listened to it, and I'll tell you candidly I
2  was shocked that the Government at some point wasn't able to
3  pull the plug and say this is something that's not worth
4  pursuing.
5       My sense of Mr. Williams is is that he is someone who
6  spoke big and who saw money being passed to him for doing next
7  to nothing and was willing to take it.  But these statements
8  are being made, you know, that the money is coming from
9  something else and it's illegal and so on and so forth.  You
10 know, law enforcement has to make many, many tough decisions,
11 but my sense is from what I see everyday in the courts is that
12 part of the decisions have to be made as to what you
13 investigate and what you prosecute and what you don't.
14       I sit in SEC matters where I see people have stolen a
15 fortune from vulnerable victims and they're not prosecuted
16 because the Government doesn't have the resources to go after
17 someone in that kind of very sophisticated fraud.  And I
18 understand it, it's regrettable, and so on.
19       But then I watched this case as it was developed in
20 the trial.  And I want to be candid with you.  I was truly
21 shocked that the Government pursued this kind of a case.
22       Now, having said that, Mr. Williams came to court and
23 he pled guilty.  And I take him that he is guilty of the crime
24 to which he pled.
25       And I've looked at the history and characteristics of

```
 1   Mr. Williams.  I think Mr. Williams, as I said before, is
 2   somebody who spoke a line that didn't really reflect reality.
 3   I think that he got himself involved in this.  I don't absolve
 4   him from it.  And I want to be very clear.  I'm not suggesting
 5   that his actions are not -- I'm not suggesting that what he did
 6   was appropriate by any means at all, but I think he allowed
 7   himself to get swept along with this thing that sounded,
 8   frankly, too good to be true.
 9           We know that there were references to his hopes about
10   developing other properties in the Bahamas and things like
11   that.  You know, people can be overly optimistic.  And I just
12   think he allowed himself to get swept up in this thing, and
13   it's terribly unfortunate.
14           Now, my obligation today is to impose a sentence that
15   reflects the seriousness of the offense, that would promote
16   respect for the law, and provide just punishment.  And, of
17   course, also to be a deterrent.  And I recognize that this
18   concept of being a deterrent is both individual and in general.
19           My sense is is that having gone through this and
20   understood how this affected not only himself but the people
21   that he loves who are close to him that he would never do
22   something like this again, that he needs to be so careful in
23   terms of making sure that he abides by the letter and the
24   spirit of the law.
25           I also, of course, need to be concerned about sending
```

```
 1  out message to other people that money laundering or public
 2  corruption is terribly serious.
 3          Aware of all of those things and looking at the
 4  background of Mr. Williams, I am satisfied that a sentence of
 5  probation is a sentence that is sufficient but not greater than
 6  necessary to achieve the goals that have been set forth by
 7  Congress.
 8          So for those reasons it is the judgment of this Court
 9  that the defendant, Mr. Joel Williams, is to be placed on
10  probation for a period of two years as to Count 7.
11          It is further ordered that Mr. Williams is to pay
12  restitution in the sum of $5,685.  Now, that restitution is to
13  be paid at 10 percent of his monthly gross earnings until such
14  time as the Court may alter that payment schedule in the
15  interest of justice.  The United States Probation Office, the
16  United States Attorney's Office all shall monitor the payment
17  of restitution and report to the Court any material change in
18  Mr. Williams' ability to pay.  These payments, of course, do
19  not preclude the Government from using any other anticipated or
20  unexpected financial gains, assets, or income of the defendant
21  to satisfy the restitution obligations.
22          Now, the restitution is to be made payable to the
23  Clerk of the United States Courts and be forwarded to the
24  Clerk's Office, Attention the Financial Section, at 400 North
25  Miami Avenue, Room 8N09, Miami, Florida, 33128.  The Clerk will
```

```
 1   then have the obligation of forwarding the restitution onto the
 2   victims on the attached list.
 3           Now, Mr. Williams, while you are on probation please
 4   remember that you must first and foremost not commit any other
 5   crime.  You are prohibited from possessing a firearm or any
 6   other dangerous device.
 7           Was the crime that Mr. Williams pled guilty to, it is
 8   a felony offense?
 9           THE PROBATION OFFICER:  Yes, your Honor.
10           THE COURT:  Yes.  Shall not possess a firearm or any
11   other dangerous device.
12           Also, of course, you must not possess or ingest any
13   control substance, any illegal drug.
14           I want you to cooperate in the collection of a DNA
15   sample and abide by the standard conditions of probation.
16           In addition to those standard conditions I'm going to
17   add the following special term and condition:
18           While on probation you must maintain full-time
19   legitimate employment, not be unemployed for longer than 30
20   days without the written permission of the Court.
21           I want you to provide to the probation officer
22   whatever documentation is requested simply so they can verify
23   that employment, and I want you to get the written permission
24   of the Court before entering into any kind of self-employment.
25           Also, while on probation you must submit to a search
```

```
 1   of your person, your property, and your home.  That search to
 2   be conducted at a reasonable time and done at a reasonable
 3   manner by the probation office.
 4            Finally, it is ordered that you pay to the United
 5   States a special assessment in the sum of $100.
 6            Mr. Williams, it is my obligation to tell you that you
 7   have the right to appeal from the judgment and sentence that
 8   has been announced here today.  And if you would like to take
 9   an appeal and if you, yourself, do not have the funds to hire
10   counsel to represent you, please know that I would, in fact,
11   appoint a lawyer to represent you.
12            You must be aware, however, that in order to take an
13   appeal you've got to file a piece of paper that's called a
14   notice of appeal, and that must be filed within 14 days of the
15   day that the judgment and sentence is recorded on the books of
16   the Court.
17            Now, before I conclude today it is my obligation to
18   elicit from counsel for both parties their fully set out of any
19   objections to the Court's findings of fact and conclusions of
20   law and also to elicit any objections that either party might
21   have to the manner in which sentence has been impose.
22            Let me turn first, if I might, to counsel for the
23   Government.
24            MR. KARADBIL:  Yes, your Honor, we do have objections
25   to the Court's findings with respect to the comments regarding
```

```
 1   the connection between the public corruption aspect of the case
 2   and Mr. Williams where the Court noted or stated something to
 3   the effect that having not being able to get Mr. Eggelletion or
 4   something like that went after Mr. Williams or others or having
 5   that concluded went after them.
 6            The facts that we believe are in the record are that
 7   Mr. Eggelletion introduced the undercover agents to
 8   Mr. Williams.  The undercover agents never sought out
 9   Mr. Williams.  We never sought out the other individual in the
10   Bahamas either.  Mr. Cambridge introduced by Mr. Williams as
11   well.  That the Government was forced to deal with Mr. Owens
12   and Mr. Williams by Mr. Eggelletion who used them as a buffer
13   in the negotiations and made them part and parcel of that case.
14   That case being, obviously, separate from the tax offense that
15   the defendant has pled guilty to.  But regardless, I wanted to
16   make certain on that particular fact-finding that there
17   is another --
18            THE COURT:  I don't think there's any question about
19   that.  I understand what you're saying.  My point is, though,
20   when it began to move away from the United States and moved off
21   into the Bahamas -- and I know there was a concern that maybe
22   Mr. Eggelletion was just putting some distance between himself
23   so that the money would come in in a more filtered way, but I
24   understand exactly how the case started and I think that the
25   law enforcement personnel are to be commended for what they
```

```
 1  were trying to do.  The point is this case evolved into
 2  something far different from that and it was sort of pie in the
 3  sky over in the Bahamas.  That's just my judgment of it.
 4          As I say, this is one of those cases where I had a
 5  chance to sit through the whole trial and listen to it, and it
 6  is clear to me, for instance, that there are some corrupt
 7  people in the Bahamas, lawyers and others, who it's almost that
 8  you get a sense that's how they conduct their business, that's
 9  what they thrive on.  I understand that's all there.
10          But looking at the defendant and what the Government
11  was able to offer in evidence as to Mr. Williams'
12  participation, what he was saying, his words and so on, I had
13  my own view as to what was really going on.
14          MR. KARADBIL:  Frankly, your Honor --
15          THE COURT:  And I understand we differ on that.
16          MR. KARADBIL:  One of my concerns, Judge, is we do
17  have a codefendant left from the Bahamas.  Mr. Cambridge is
18  going through extradition at this time.  And I'm concerned as
19  to what -- if the Court is making a statement such that
20  there's -- believe there's entrapment as a matter of law or
21  entrapment in this matter, that's of concern.
22          THE COURT:  I'm just simply saying if I were to have
23  sat as the jury in this case as to Mr. Williams, I would have
24  returned a verdict of not guilty as to Mr. Williams.
25          I understand exactly what you're saying about the
```

1   lawyer that you're talking about.  Is it Sidney Cambridge?

2           MR. KARADBIL:  Yes, your Honor.

3           THE COURT:  I listened to the tapes and everything

4   else.  I know what was said and so on and so forth.  But I'm

5   just being very candid with you folks.  And I must tell you

6   this.  In all of my time on the federal bench I've never seen a

7   case quite like this one.  And my sense was that the Government

8   should have exercised greater discretion and realized it was

9   simply -- it was just going way off course.

10          You know, when you're into these sting operations, I

11  realize there's always a question of is there really a crime

12  and if there's a crime who's committing it, who are the

13  motivating factors and so on.  And you have these people

14  spinning tales of huge amounts of money and so on and so forth

15  and everyone is going to take make money because we're all

16  going to get a chunk of this fictitious amount of money.

17          You know what?  I'm just telling you having sat

18  through the whole trial had I been the trier of fact, I would

19  not have had the difficulty that the jury had in reaching a

20  conclusion.  And the jury, of course, couldn't ultimately

21  decide.  I don't know if we really found out what the jury's

22  verdict -- how they were split.

23          MR. KARADBIL:  The breakdown was eight to four at

24  least, your Honor.

25          THE COURT:  Leaning for conviction.

```
 1              MR. KARADBIL:  Yes.
 2              THE COURT:  All right.  Thank you.
 3              Let me turn to the defense.  Any objections?
 4              MR. WILCOX:  No, your Honor.
 5              THE COURT:  All right.  Anything else then to come
 6   before the Court?
 7              THE PROBATION OFFICER:  Your Honor --
 8              MR. KARADBIL:  Not from the Government.
 9              THE PROBATION OFFICER:  -- he did pay an additional
10   $700 towards restitution.
11              THE COURT:  Well, let's be clear that Mr. Williams is
12   to be given credit for every single penny that he has paid.  So
13   all I did was set the full amount.  But he's to be given credit
14   for everything that he has paid.  Okay?
15              THE PROBATION OFFICER:  Thank you.
16              THE COURT:  Good.  Thank you all very much.
17         (Proceedings concluded at 10:29 a.m.)
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E

 2        I, Karl Shires, Registered Professional Reporter and

 3   Federal Certified Realtime Reporter, certify that the foregoing

 4   is a correct transcript from the record of proceedings in the

 5   above-entitled matter.

 6        Dated this 17th day of January, 2011.

 7
            [signature: Karl Shires]
 8        _____
          Karl Shires, RPR FCRR
 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```